1  Jason Scutt, pro se
2  P.O. BOX 88980
3  HONOLULU HI, 96830
4  808-250-0472
5  Jason.r.scutt@gmail.com
6

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
26 July 2021 11:41 PM lrs
Michelle Rynne, Clerk of Court

| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI'I | |
|---|---|
| JASON SCUTT, an individual, on behalf of herself<br><br>Plaintiff<br><br>vs.<br><br>UNITEDHEALTH INSURANCE CO AND SUBSIDIARIES;<br><br>MAUI COMMUNITY CLINIC AKA "MALAMA I KE OLA"<br><br>Defendants. | CASE NO.: Civil 21-00323-JAO-RT<br><br>PLAINTIFF'S COMPLAINT AND REQUEST FOR INJUNCTION; CERTIFICATE OF SERVICE<br><br>Trial Date: none set |

7

8  **PLAINTIFF'S COMPLAINT AND REQUEST FOR INJUNCTION**

9  **I. INTRODUCTION:**

10      This action is brought by Claimant, a transgender woman and recipient of

11  Medicaid administered exclusively by the Defendants in Hawaii for injunctive and

12  monetary relief who denied insurance coverage for medical treatments critical to

13  Plaintiff's Gender Dysphoria, which is documented by multiple physicians.

1

1    Defendant handled Plaintiff's medical care, records, private information and

2    prescriptions with reckless indifference and subsequently engaged in retaliation

3    after grievances were filed to adress the violations. As the exclusive provider of

4    Medicaid coverage in Hawaii, Defendant withheld coverages for transgender-

5    specific health care, delayed or prevented presurgical and other medical procedures

6    with deliberate indifference based on personal objections and lack or experience or

7    knowledge by certain employees representing the company. This resulted in access

8    to needed medical care difficult and impossible for an unreasonable time after

9    requesting the treatment for the Dysphoria. The actions also resulted in the

10   cancelation of a planned surgery in California and created the need to remain on a

11   drug that is no longer needed after surgery. This drug subsequently caused high

12   blood potassium and therefore further physical and emotional trauma by

13   preventing any reasonable access to gender affirming surgery and the prerequisites.

14   Defendant also ignored reasonable requests for disability accommodations and

15   "prior auths" for needed medical care and left Plaintiff in a state of physical pain

16   by conveniently cancelling coverage and sharing false defamatory statements with

17   third party providers about "behavior problems" which did not occur. These

18   statements caused local providers to discontinue care thereby further prolonging

19   suffering and reducing Plaintiff's ability to enjoy a normal quality of life.

20

## II. THE PARTIES:

1. UnitedHealth Insurance Company "Unitedhealth" – Plaintiff's insurance provider and Medicaid administrator

**2.** Maui Community Clinic AKA "Malama I Ke Ola" or "Malama Clinic" Plaintiffs former Primary Care Provider

## III. BASIS FOR JURISDICTION:

Diversity of Citizenship (Defendant UnitedHealth based in Utah), Federal Question, Title VI of Civil Rights Act 1964 (Defendant receives Medicaid and other federal funding), Americans with Disabilities, Act Titles II , III for not providing accommodation special disability requests, 8TH Amendment, 42 USC Sec 1983 abuse of power under the color of state authority.

## IV. FACTS GIVING RISE TO THE ACTION:

UNITED HEALTHCARE: Plaintiff met with "service coordinators " Nicole Pagan and an unknown supervisor on December 3, 2019 to discuss gender-affirming surgery. Plaintiff suffers from severe body dysphoria that requires this procedure.

At that meeting , "Service coordinators" represented that they had "experience" with transgender patients and would coordinate services and therefore access to the surgery per medical requirements. Claimant asked during the meeting for all information and requirements necessary to be ready for surgery,

1  however more than a year later it was discovered that requirements had been

2  omitted thereby causing cancelation of surgery that was originally scheduled for

3  December of 2020.  During a consult, the surgeon discovered "presurgical"

4  requirements had been omitted by UnitedHealth and had to cancel due to the fact

5  that these "presurgical" requirements, especially hair removal, must be done first.

6       Beginning around December of 2019, Plaintiff began experiencing abusive

7  conduct by employees representing UnitedHealth (see Exhibits A, 1-5), after the

8  company learned that Plaintiff was working with Planned Parenthood for Gender

9  Affirming care. These employees demonstrated their protest by refusing to assist as

10  well as sending intimidating text messages, emails, and otherwise causing harm

11  and disruptions in the treatments prescribed by physicians at planned parenthood,

12  as detailed below:

13       On December 3, 2019 plaintiff was unable to refill a prescription for gender

14  affirming care at Walgreens pharmacy due to "insurance issues", despite the fact

15  that these were covered as medical necessity and prescribed by physicians at

16  Planned Parenthood. This created the need for a social worker at planned

17  parenthood to step in and attempt to resolve the issues, and Plaintiff experienced

18  the same pattern throughout the much of 2020 and 2021 as well.

19       On December 18, 2019 Plaintiff received another abusive email from the

20  Defendant suggesting that Plaintiff should be taking "6.2 milligrams " of a gender-

4

1   affirming prescription, the actual dosage was much lower and this would be an

2   obvious overdose – see [Exhibit A,1]. Also note workers at UnitedHealth copying-

3   in third parties in an email, who later respond to the "HIPAA" violation; this

4   demonstrates the general lack of care given to Plaintiff's delicate and private

5   medical history and places her in unnecessary danger as well by sharing

6   information that ultimately incited bullies to engage in psychological abuse.

7       On Jan 1, 2020, Plaintiff requested assistance with an appeal and formal

8   grievance for denial of benefits in writing from Nicole Pagan, a UnitedHealth

9   social worker and "service coordinator". Pagan refused to provide assistance or

10  acknowledge the formal grievance.

11      On January 9th, 2020 Plaintiff filed another whistleblower complaint, this

12  time regarding the unsafe and discriminatory transportation can service being

13  operated by UnitedHealth, a video of the incident was provided to the Defendant as

14  well as the Department of Health. Plaintiff attempted to utilize the Transportation

15  service listed on the Medicaid card (LogistiCare, which is a subsidiary of

16  UnitedHealth) several times thereafter, however drivers consistently refused to

17  pick up for certain appointments related to transgender health.

18      On February 3, 2020, Plaintiff filed yet another grievance with the

19  Defendant as well as with the Department of Health regarding problems getting

20  prescriptions related to gender-affirming care. Plaintiff was forced to go several

days without the prescribed care based on these incidents which caused negative physical and emotional affects.

On February 8th, 2020, Plaintiff filed several documents for reimbursement for alternative transportation (UBER) after notification was given to UnitedHealth in writing regarding the unsafe and inappropriate condition of the transportation service and the need for a safe LGBTQ-friendly alternative, however these claims were all later denied. Appeals were filed and finally an "Administrative Hearing" was held in January, but UnitedHealth continued to refuse reimbursement for "presurgical" treatments that prevented surgery from taking place and also for the Uber rides that Plaintiff was forced to take after the multiple unsafe rides were reported to the Company.

On May 8th of 2020, Plaintiff began treatments at Maui Community Clinic "MCC" after Maui Medical Group and Dr. Guzman had maxed-out all of Plaintiff's personal credit cards. No effort was ever made by Dr. Guzman to approve the insurance coverage for the medically-necessary treatments, however she continued to provide unnecessary laser treatments in areas around the surgery area, but refused to treat the actual area. This was extremely inappropriate for a Primary Care Provider in charge of a transgender patient's health.

Plaintiff also requested treatment for injured wrist, sinus, and other medical issues, however Defendants could or would not provide these services thereby

1  causing further inflammation of these injuries. Plaintiff was also physically

2  assaulted by two nurses causing new injuries and hearing loss. A "Nurse Christine"

3  and other unknown workers refused to assist or engaged in negligence such as the

4  injuries caused to her ear, one of which was caught on video. A Medical Inquiry

5  Panel per Hawaii State Law was filed subsequently, and formal grievances were

6  sent to the Department of Health Office of Civil Rights "OCR" on December 19,

7  2019.

8       On September 8, 2020, Plaintiff filed another formal grievance with the

9  clinic's administrators as well as the OCR after staff at Malama told her to "move

10  to California" after problems refilling her prescriptions and getting presurgical

11  treatments covered and approved. Individuals such as Employee Nicole Pagan, An

12  unknown "supervisor", Nurses German and Carazio and other members of this

13  Alliance used their positions in the state and federally-funded clinic to express

14  protest against the process based on religious, political or personal beliefs;

15  however continued to either cause or ignore problems thereby preventing, delaying

16  and cancelling any reasonable chance of getting the surgery. Also, by ignoring or

17  postponing action on urgent requests to fix prescription problems, these employee

18  knowingly caused Plaintiff to miss several doses of the prescribed medication that

19  directly caused further emotional as well as physical harm to Plaintiff, such as

20  hirsutism and hair regrowth on the face and chest and inflamed emotional trauma

1    related to the untreated body dysphoria. Defendants then later provokes that

2    dysphoria by using terms such as "Krusty the Clown" (to refer to damaged hair

3    long on the sides and bald on top) and "Clinical Rape".

4         Defendant also ignored reasonable requests for disability accommodations,

5    including as recently as July 20, 2021 when drivers once again refused to text or

6    email Plaintiff as a requested accommodation thereby preventing her from

7    benefiting from the Medicaid – provided transportation equally. Respondent

8    consistently causes disruptions, denials, mistakes and delays in Claimant's health

9    plan thereby preventing acres to medically necessary surgery and other procedures

10   and delaying her treatment for over 2 years. Respondent intentionally prevented

11   access to the appeals and grievance process. Respondent charged Medicaid and

12   Claimant for "behavior health" services with informing Claimant or obtaining her

13   consent. Later multiple employees ratified the illegal "behavior contract" that was

14   then shared with third parties in a defamatory manner. Neither Unitedhealth nor

15   Malama Clinic could identify any such instances, dates or specific examples of this

16   "behavior" problem at any of the hearings. That information was later used to

17   discriminate and disrupt Plaintiff's health plan. In or about October of 2020,

18   Plaintiff noticed health care employees who worked for Malama clinic and other

19   related defendants attending pro-Trump rally at the local mall and streets,

20   displaying political view such as "Blue Lives Matter" and other symbols that are

8

1  known to be anti-transgender, anti-LGBTQ. For example, a female [?] Employee

2  "Terrilyn German" wore "confederate flag" undergarment which were visible to

3  Plaintiff during an appointment – a generally accepted symbol of hate. Employees

4  later expressed those beliefs by engaging in further acts of sabotage designed to

5  disrupt the gender-affirming surgery and related therapy and accomplished this in

6  fact. Employees later made anti-semetic statement and engaged in hate speech and

7  harassment that is common to the other related/interlocutory proceedings already

8  filed in the District Court. A detailed journal of incidents related specifically to

9  these defendants is included in [Exhibit A, 4].

10  In July of 2020, Defendants agreed that California would be a "better" place

11  for this type of Healthcare and collectively formulated a scheme to neglect their

12  obligation to Plaintiff by instructing her to travel to California for presurgical /

13  medically necessary treatments and later submit reimbursement forms. See

14  [Exhibit A,1] for excerpts of these emails and other examples of negligence. These

15  claims were subsequently denied costing plaintiff approximately $3,000 out of

16  pocket. Emails and statements were made by Pagan to "submit reimbursement

17  forms" after service could not be coordinated locally.

18  Respondent shared private and sensitive medical information about

19  Complainant with other van passengers. Respondent shared false, damaging

20  information with third party medical providers in the community thereby damaging

1   her Claimants reputation. For example, false accusations of "racism", "profanity"

2   and "threatening behavior" were shared with third party providers which caused

3   direct delays and prevention of access to medical treatment. No such specific

4   incidents of said "behavior" could be produced after multiple grievances,

5   administrative hearings and appeals were exhausted beginning in October of 2019.

6   Defendant employees continue to make subtle but deliberate efforts to delay or

7   prevent gender affirming surgery in Hawaii.

8       In December of 2020, Plaintiff reached out to Therapists at the defendant for

9   additional help with emotional trauma after experiencing hate speech and

10  harassment, described the incidents in writing -see [exhibit A,4] however did not

11  get a response and was never allowed to see a therapist for this concern. Later the

12  in-network therapists at Malama refused to provide their records as well as other

13  medical records as requested by the SSA thereby causing Plaintiff's Social

14  Security Disability Application to be denied. Subsequently, employees who

15  identified as "social workers" taunted Plaintiff about her ideas about possibly

16  "...seeing a therapist…" about these issues - which is an example of further

17  deliberate disparagement.  Plaintiff also filed multiple formal appeals and formal

18  grievances with Medquest and the Department of Human Services – [See Exhibit

19  A,2] for a list of appeals and grievances filed. These were all ignored or dismissed

1   leaving Plaintiff with no other administrative option that to file a lawsuit to request

2   injunctive relief.

3        In June of 2021, Plaintiff attempted to file a "Medical Inquiry Panel" or

4   "MICP" electronically via the State of Hawaii Department of Commerce. Another

5   attempt to file the MICP was made in July of 2021 and is expected to be underway

6   currently.

7   **III. FIRST CAUSE OF ACTION- Medical Malpractice related to Title**

8   **VI, Civil Rights Act of 1964**

9   Hawaii state law §431 mirrors Title VI specifically prohibiting the following:

10  • Designating a person's or the person's family member's actual gender

11     identity or perceived gender identity as a preexisting condition to deny,

12     cancel, or limit coverage

13  • Denying, canceling, or limiting coverage for services on the basis of actual

14     gender identity or perceived gender identity including but not limited to the

15     following:

16        o Health care services related to gender transition; provided that there is

17         coverage under the policy, contract, plan, or agreement for the

18         services when the services are not related to gender transition

19

1    Defendants collectively denied all these coverages and refused to provide

2    medically-necessary treatments in violation of both state law and Title VI

3    simultaneously. Defendant is covered under Title VI because they receive federal

4    funding and are the sole administrator of Medicaid in Hawaii. Plaintiff will also

5    show these violations occurred *because* she was seeking gender affirming surgery.

6    Employees of these organizations later engaged in hate speech, harassment and

7    other protest aimed specifically at preventing the surgery from ever taking place in

8    reality; including the use of the work "Kike" to mean something other than to

9    disparage a Jewish person – for example to disparage a transgender woman who

10   may or may not have Jewish religious beliefs. Also, multiple untreated medical

11   needs such as a broken wrist and skin disorders were never examined because

12   employees felt "uncomfortable "treating a transgender patient. The "pre-surgical"

13   should have been considered by a reasonable person to be one and the same as the

14   "actual" surgery. Defendant used "cosmetic" as an excuse; however, the surgeon

15   per the signed and written letter insisted that without the "pre-surgical", the actual

16   surgery could not be performed and thereby delayed from a possible date in

17   October or November of 2020 to sometime late 2021 or early 2022 or not to take

18   place at all. This is an unreasonable amount of time for any patient to be delayed a

19   medically-necessary procedure despite the nature or causes, and cause any

20   reasonable person to suffer great physical and especially emotional harm, as all

1   transgender patients under this program are somehow considered to have a mental

2   "illness" which implies also a disability. Plaintiff will show that these coverages

3   were denied solely based on her Trans/LGBTQ status or "sex".  Plaintiff will also

4   show that Defendant demanded that she travel to California under Covid19

5   quarantines and shutdowns to begin treatment in August of 2020 and undergo

6   detainment and 14-day quarantine, despite the fact that the services could have

7   simply been done locally on Maui or Oahu without risk to public health because

8   "other patients were uncomfortable" with a transgender person sharing the

9   equipment. Defendant should have been aware of the dangers and potential risk

10   and therefore provided the pre-surgical locally or Oahu or otherwise provided more

11   long-term transfer assistance to California for surgery pre-op and recovery.

12       Defendant employees also denied emergency dental care after she broke a

13   tooth and saw a doctor, the doctor was "unable to use a drill" on her broken tooth,

14   despite the fact that other dentists were under no specific order not to use drills,

15   other non trans patients were receiving emergency dental care.  Staff and workers

16   at Defendant's organization which has a duty to fairly administer Medicaid, clearly

17   used their objections, contempt and authorities to taunt Plaintiff while neglecting to

18   "prior authorize" the medical care. Social workers and medical staff at Malama

19   health clinic - her primary care provider (PCP) as well as Planned Parenthood  who

20   each assisted Plaintiff in requesting "prior Auths", "reimbursements", and

1    "appeals" however Defendant continued to block access to all these and many

2    other critical aspects of Plaintiff's health care; thereby causing the physical pain

3    and emotional, trauma to reduce her ability to enjoy a fair and normal quality of

4    life without significant assistance while being denied medical care. Defendant

5    clearly acted with undue and deliberate indifference, such as the omissions and

6    denials and deliberate indifference to Plaintiff's physical and emotional state, and

7    was fully aware that the neglect was causing ongoing injury and disruptions to

8    Plaintiff's life and quality of health.

9        Plaintiff also tried to use the "Free" covered transportation service provided

10   by Defendant, but that service refused to take Plaintiff to Planned Parenthood and

11   other gender affirming appointments. Defendant could not provide a safe ride

12   using Medicaid funding, nor did they demonstrate any care or regard whatsoever

13   when assistance was needed from them thereby further deliberately placing

14   Plaintiff's life at risk during covid 19, workers should have known the special risks

15   and circumstances transgender people face, but chose to ignore, mock, exclude,

16   and otherwise make their personal protests known implicitly rather than explicitly.

17       Defendant repeatedly failed to provide these services thereby resulting in

18   physical and emotional harm, prolonged need for a certain medication, and also

19   dropped coverage via "prior auth"  for dislocated painful wrist and ear condition

20   before MRI results and referrals for gender affirming surgeries could be

1   coordinated for surgeons and other providers thereby prolonging Plaintiff's pain

2   and agony.

3          The purpose of the Act was to prohibit the denial, exclusion, or limitation

4   of health care services or treatment to a person on the basis of a person's actual

5   gender identity or perceived gender identity:

6    "§431"  Non-discrimination on the basis of actual gender identity or perceived

7   gender identity; coverage for services.  (a)  No [Insurance Provider] … shall

8   discriminate with respect to participation and coverage under the policy, contract,

9   plan, or agreement against any person on the basis of actual gender identity or

10  perceived gender identity.    (b)  Defendants collectible engaged in discrimination

11  under this section by following:

12   (1)  Denying, canceling, limiting, and refusing to issue or renew an insurance

13  policy, contract, plan, or agreement on the basis of a person's or the person's family

14  member's actual gender identity or perceived gender identity;

15   (2)  Demanding or requiring a payment or premium that is based on a person's

16  or the person's family member's actual gender identity or perceived gender

17  identity;"

18         Defendant was made aware of need and opportunity to begin pre-surgical

19  requirements that are covered as medical necessity under this act, however

20  demanded that Plaintiff pay for airfare, lodging, travel, safety, and medical pre-op

1  treatments costing her approximately $5,000 total thereby limiting and preventing

2  the covered service. Defendant was aware that Plaintiff was subsisting on

3  SNAP/EBT foodstamps, was experiences housing and discrimination issues, and

4  but still insisted that she would get "better health treatment in California" and

5  required "reimbursement" instead of "prior Authorization". A letter from a surgeon

6  insisting that surgery cannot be performed without "presurgical" requirements

7  being done[1] Defendant then agreed to cover the surgery and all related pre-

8  surgical, such as hormone replacement therapy, one-year mental health evaluations

9  and other documents required by the surgeon as prerequisites; however, Defendant

10  intentionally limited or denied other "pre-surgical" requirements that any

11  reasonable person would identify as one and the same as the "actual surgery". As a

12  result, Plaintiff was then asked by Defendant to "stay with family" while in

13  California and also to allow these family with limited resources to somehow pay

14  for the "pre-op" thereby, straining relationships and causing further emotional

15  distress. Defendant therefore used the knowledge of Plaintiff's financial and

16  homeless status to further deny and refuse benefits covered under the protection of

17  these acts. Plaintiff had made fair efforts beginning in October 2019 to have the

18  pre-surgical requirements pre-authorized; however Defendant made malicious

---

[1] These take usually 10 months or more to complete, however Defendant intentionally omitted any reference to "pre-op" or "pre-surgical" when starting Plaintiff on her medical transition in October 2019 thereby costing an additional year.

16

1    effort to deny her prescriptions for gender-affirming care – see emails in

2    [EXHIBIT A,1] of UnitedHealth care worker "Debra" taunting Plaintiff after

3    requests to resume her medical therapy. Other workers can be seen in these emails

4    making deceptive efforts to delay, postpone, cancel or otherwise interfere with

5    Plaintiff's transgender health care specifically. The deliberate omission of

6    disclosure of the "pre-surgery" requirements were not discovered until August

7    2020, thereby delaying medical care another 10-12 months and costing additional

8    federal resources for that entire time. Staff at Defendant also made deceptive

9    efforts to keep plaintiff from filing multiple appeals based on knowledge of her

10   medical conditions and declined any accommodation after she requested assistance

11   for hearing/speaking/communication difficulties to file the appeals and also for

12   safe transportation to medical appointments as well as referrals for other basic

13   emergency dental pain and broken wrist, hearing issues, etcetera.  Regardless of

14   the "behavior contract ", Defendants collectively had a legal duty to provide these

15   services.

16       Plaintiff reported several HIPPA violations to Office of Civil Rights [see

17   Exhibit A,2] for examples, and noticed that knowledge of her medical status had

18   somehow been shared among third party providers in the small Maui community.

19   As a result, she experienced hate-based harassment and domestic violence (Death

20   Threats by protestors) at her home as a direct result of the private information

being shared. Also, the defamatory information about behavior problems is illustrated in letters from both Malama Clinic (a third-party "provider") and UnitedHealth. Additionally, The contract signed at the onset was not legal because unequal bargaining power and lack of any other providers of this unique medical need. The Court should also consider Brown V UnitedHealth Civil No. 14-cv-0661-BTM (DHB) (S.D. Cal. Sep. 12, 2014) per the similar refusals of mental health related coverages.

## IV.  SECOND CAUSE OF ACTION - DEFAMATION

Defendants collectively engaged in defamation by the following:

A false statement was made – the "behavior problems" which was purported to be fact. The statement was not privileged based on the omission in the terms of the "Behavior Contract" [Exhibit A,3]

This was shared freely among Defendants who were third parties to each other, also employees can be seen using the "reply all" email function thereby involving  parties such as Planned Parenthood which are not named as Defendants – see example in [Exhibits A,1,3]

Fault is shared by then Defendants collectively. The "Behavior Contract"  is an example of Defendant Malama Clinic negligently experimenting with unwanted "behavior" therapy which amounted to an 8th amendment violation by distracting from the actual needed medical necessity thereby prolonging and intensifying

1   Plaintiff's suffering on a daily basis. Plaintiff did not consent to many treatments

2   aside from the needed surgery, however, was coerced to participate in such

3   negligent distractions as the "behavior contract" as well as enduring hate speech

4   and harassment by employees who claim this to have some sort of "clinical" value.

5   Plaintiff has not been able to enjoy a normal quality of life as a direct result of the

6   unwanted "behavior" treatments and ommissions of transgender healthcare that is

7   considered a medical necessity by the established "WPATH" guidelines (generally

8   accepted standard for transgender healthcare). Plaintiff is harmed because she was

9   forced to spend valuable time and resources searching for places to live in

10   California or elsewhere per the advice of Dr. Vaz, the "Primary Care Provider".

11   These employees including especially Taralyn German should also be held

12   to account under USC 42 SEC. 1983 for the gross abuse of power, extra billings to

13   Medicaid for unwanted and unnecessary "Behavior" services and other hate-based

14   sabotage to Plaintiff's permanent medical charts. This person therefore subjected

15   the Plaintiff to conduct that occurred under color of state law, as an administrator

16   of Medicaid and other State and Federally-Funded services, and this conduct

17   deprived the Plaintiff of protected rights and also deprived Plaintiff of her 8th

18   amendment rights by engaging in "punishment" aka retaliation for "behavior" that

19   did not occur.

1    **V. THIRD CAUSE OF ACTION - 8th Amendment, US**

2    **CONSTITUTION**

3    When compared with Kosilek v. Spencer, 740 F.3d 733. Document Court,

4    Federal Court of Appeals. Document Docket(s), 1 1:00-cv-12455-MLW and Green

5    v. Gibson, 613 A.2d 361 (D.C. 1992), Edmo v. Idaho Dept. of Corrections  and all

6    other relevant cases suggests that transgender people who are under the care of a

7    state or federal program are entitled to their 8th amendment rights; and the Courts

8    in these decisions have upheld the general medical belief that depriving a patient of

9    gender -affirming surgery and other health care is a violation of those rights. The

10   Court should consider patients under the care of Medicaid to also have these rights

11   equally. Courts have also upheld the rights of patients receiving Medicaid to

12   receive mental health treatment, such as Brown v. United Healthcare Ins. Co.

13   UNITED STATES DISTRICT COURT ... Duran v. Cisco Sys., Inc., 258 F.R.D.

14   375, 378 (C.D. Cal. 2009). Defendant clearly recognizes that the services,

15   including surgery, were a "medical necessity" to treat extreme Dysphoria, however

16   still chose to ignore and deny services based on personal political or religious

17   objections by some employees. Medicaid coverage of transgender health services

18   is explicitly allowed per Hawaii state law and Plaintiff's federal civil rights.

19   Bostick v Clayton city and recent equality act that allow the term "sex" to cover

20   the complex issues of gender diversity, sexual orientation, etc in employment

1  discrimination. The Court should extend these rights under Title Vi as well and

2  also take note that the majority of case law associated with similar deprivations of

3  8th amendment rights and critically needed medical interventions occurred with

4  transgender patients who were incarcerated; however, the sadistic treatment by

5  employees with apparent political or religious protest is tantamount to unusual

6  punishment under the 8th amendment regardless of prisoner status and equally

7  satisfying to these individuals. It is also curious that all of these cases involve

8  prisoners, which seems to be the preferred status for transgender individuals

9  requesting help from these programs.

10  **VI. FOURTH CAUSE OF ACTION – AMERICANS WITH**

11  **DISABILITIES ACT**

12  Plaintiff made multiple formal and written requests for a specific accommodation

13  based on her hearing and speaking impairments, however UnitedHealth refused on

14  almost all of these occasions. For example on July 20, 2021Plaintiff was unable to

15  use the ground transportation service because social workers working for

16  UnitedHealth refused to provide a text method to communicate with the driver.

17  Title III prohibits discrimination on the basis of disability in the activities of places

18  of public accommodations (businesses that are generally open to the public).

19  Defendant UnitedHealth violated this Tile by refusing to provide a hearing

20  accommodated option as well as refusing to authorize a wrist brace for Plaintiff's

1    broken wrist. Plaintiff made efforts to obtain her medical records in writing,

2    including those needed to prove the hearing impairment for the Court, however

3    UnitedHealth deliberately obstructed this process. As a result, Plaintiff was not

4    able to provide the records from the Ear Nose and Throat Doctor and other doctors

5    to the Court or the Social Security Administration. This resulted in motions being

6    denied as well as Plaintiff's Social Security Disability Application to be denied

7    based on lack of these records. Plaintiff made a good faith effort to request and

8    obtain these, however UnitedHealth prevented the simple and reasonable release of

9    these records to the requesting parties. As such Plaintiff suffered the loss of the

10   needed disability assistance as a direct result. Plaintiff will cite findings by Dr.

11   Sussman, and Ear Nose and Throat doctor on Maui, who found hearing loss and

12   tinnitus in both of plaintiff's ears. Plaintiff reached out to Defendant as well as the

13   provider for the medical records, but never received them. Plaintiff is working with

14   a new ENT on Oahu and expects to have additional medical records to submit

15   during discovery.  See exhibit A,1 for one of many requests for hearing/speaking

16   accommodations (Plaintiff gas ear pain and tinnitus (see medical record excerpt in

17   [Exhibit A,1]) and can only use telephone for scheduled events with the assistance

18   of an ear phone.)

19        **Relief**: Wherefore Plaintiff prays for relief as follows:

20        a.     That the Court accept jurisdiction

b.     That the Court find in favor of Plaintiff

c.     That the Court award compensatory, statutory, and/or exemplary

damages in the amounts to be proven at trial

d.     The Court grant such additional or alternative and further relief as the

Court deems just and equitable

e. The Court grant and injunction to allow the surgery and related unattended

health care needs, such as broken teeth and MRIs to be unobstructed and to

commence. Also a protective order against Defendants as well as participants of

other related/interlocutory proceedings in the harassment. Specifically, Plaintiff

requests injunctive relief for immediate reinstatement of covered benefits and

authorizations for "pre-surgical", which is a ridiculous and non-sensical distinction

from an actual and serious medically-necessary procedure known as "the surgery"

itself, as any reasonable person would expect

g. Plaintiff also requests reimbursement of funds obtained by the Defendant

from family members to pay for "pre-surgical" including travel and lodging in

California and/or Oahu. The preliminary amount demanded from Plaintiff's family

while under duress and coercion by Defendant was approximately $50,000 and

needs to be repaired immediately to stop strains and damages on separate related

parties/family members. Plaintiff also requests a formal review of the Social

Security Application that was denied.

1   h. Punitive and Exemplary damages requested are $100,000 minimum under each

2   tilte for trauma and delayed health care under Federal civil rights afforded as well

3   as under the State election for Medicaid coverage per the bill described and another

4   minimum of $100,000 for failure to accommodate multiple requests for assistance

5   under ADA. These should be considered minimum totals subject to the Court's

6   discretion and are calculated roughly as the equivalent of one-year lost living

7   wages per plaintiff's experience and qualifications.

8   Defendant should also reimburse Medicaid for wasted and unnecessary "behavior"

9   services.

10   CERTIFICATION AND CLOSING:

11   Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of

12   my knowledge, information, and belief that this complaint: (1) is not being presented

13   for an improper purpose, such as to harass, cause unnecessary delay, or needlessly

14   increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous

15   argument for extending, modifying, or reversing existing law; (3) the factual

16   contentions have evidentiary support or, if specifically so identified, will likely have

17   evidentiary support after a reasonable opportunity for further investigation or

18   discovery; and (4) the complaint otherwise complies with the requirements of Rule

19   11. For Parties Without an Attorney: I agree to provide the Clerk's Office with any

20   changes to my address where case related papers may be served.  I understand that

1   my failure to keep a current address on file with the Clerk's Office may result in the

2   dismissal of my case.

3   DATED: Maui, Hawai'i Monday, July 26, 2021

4   **JASON SCUTT**

5   /s/ Jason Scutt

6   Jason.r.scutt@gmail.com