IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON SCUTT,<br><br>              Plaintiff,<br><br>     vs.<br><br>UNITEDHEALTH INSURANCE CO. AND SUBSIDIARIES; MAUI COMMUNITY CLINIC aka "MALAMA I KE OLA,"<br><br>              Defendants. | CIVIL NO. 21-00323 JAO-RT<br><br>ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND JOINDERS AND (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLEADING |

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND JOINDERS AND (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLEADING**

This action concerns alleged disability discrimination and the denial of health insurance coverage and medical treatment related to pro se Plaintiff Jason Scutt's ("Plaintiff") gender affirming medical care.  Defendants United HealthCare Insurance Company ("UHC"), LogistiCare Solutions, LLC ("LogistiCare"), Community Clinic of Maui Malama I Ke Ola Health Center, incorrectly named Maui Community Clinic aka "Malama I Ke Ola" ("CCM"), and Maui Medical Group ("MMG") (collectively, "Defendants") seek dismissal for (1) failure to state a claim; (2) lack of supplemental jurisdiction; and (3) failure to comply with Court orders.  Alternatively, Defendants move to strike portions of the Second Amended

Complaint ("SAC") and Exhibit A to the SAC.  Plaintiff requests leave to amend the SAC.

The Court elects to decide these motions without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice for the U.S. District Court for the District of Hawaii.  For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss and related joinders.  ECF Nos. 27, 34, 36, 38, 39, 41, 43.  The Court DENIES Plaintiff's Motion for Leave to Amend Pleading.  ECF No. 64.

## BACKGROUND

### A.    Factual History

This is the tenth lawsuit filed by Plaintiff in this district since January 2020. *See Scutt v. Norton*, CIVIL NO. 21-00280 JAO-KJM, 2021 WL 5989107, at *5 n.7 (D. Haw. Dec. 17, 2021) ("*Norton*") (listing cases).  In this case, Plaintiff presents a wide range of allegations largely pertaining to her dissatisfaction with transgender-related medical care and health insurance coverage.  ECF No. 23. Plaintiff claims that she has been mistreated and denied proper medical care and insurance coverage for procedures that are critical to her gender reassignment.  *Id.* Plaintiff also alleges that she was unable to utilize transportation services because LogistiCare and UHC would not communicate via email or text message to

2

accommodate her hearing loss and tinnitus, and that she could not equally benefit from these services due to her hearing problems and body/gender dysphoria.  *Id.* ¶¶ 91–92.

## B. Procedural History

Plaintiff commenced this action on July 26, 2021 against UHC and CCM, asserting four claims:  (1) medical malpractice related to Title VI of the Civil Rights Act of 1964 and "Hawaii state law § 431"; (2) defamation; (3) violation of the Eighth Amendment; and (4) violation of Title III of the Americans with Disabilities Act ("ADA").   ECF No. 1.  On July 28, 2021, the Court issued an Order (1) Dismissing Complaint and (2) Denying IFP Application.  *See Scutt v. UnitedHealth Ins. Co.*, CIVIL NO. 21-00323 JAO-RT, 2021 WL 3195018 (D. Haw. July 28, 2021).  The Court dismissed Plaintiff's Title VI and Eighth Amendment claims with prejudice, and dismissed her ADA claim with leave to amend.  *See id.* at *2–3.

The Court declined to address Plaintiff's state law claims at the time.  *See id.* at *3.  Although Plaintiff also invoked diversity jurisdiction, the Court cautioned that her jurisdictional allegations were deficient and that any amended pleading must provide the parties' citizenships.  *See id.* at *4.  The Court explained that diversity jurisdiction cannot exist if Plaintiff and CCM are citizens of Hawaiʻi.  *See id.*  Plaintiff was prohibited from adding parties (except to identify UHC

subsidiaries referenced in the Complaint) or claims without leave of court through a formal motion.  *See id.*

On August 17, 2021, Plaintiff filed a First Amended Complaint ("FAC") against UHC and CCM, alleging malpractice under Hawai'i Revised Statutes ("HRS") § 431:10a-118.3, defamation, and violations of the ADA.  ECF No. 11. CCM then filed a Motion for a More Definite Statement.  ECF No. 15.

At a September 27, 2021 status conference, CCM agreed to withdraw the motion and permit the filing of a second amended complaint.  ECF No. 22. Magistrate Judge Rom Trader imposed eight requirements regarding the formatting and content of the SAC.  *See id.*

On October 31, 2021, Plaintiff filed the SAC against Defendants.  ECF No. 23.  Plaintiff asserts three causes of action:  (1) medical malpractice under "HRS 431" against all Defendants; (2) defamation against CCM and UHC; and (3) violation of Title III of the ADA against UHC and LogistiCare.  *Id.*

Defendants responded with motions to dismiss.  ECF Nos. 27, 34, 36, 41. UHC joined in CCM's and LogistiCare's motions to dismiss.  ECF Nos. 38–39. CCM filed a joinder to LogistiCare's Motion to Dismiss.  ECF No. 43.  Plaintiff opposed the motions to dismiss, *see* ECF Nos. 33, 49–51, and Defendants filed replies.  ECF Nos. 52, 60–62.

On February 2, 2022, Plaintiff filed a Motion for Leave to Amend Pleading. ECF No. 64.  Defendants filed oppositions on February 11, 2022.  ECF Nos. 66–68.

At the Court's request, UHC and LogistiCare filed supplemental memoranda regarding Plaintiff's ADA claim on February 18, 2022.  ECF Nos. 70–71.

## LEGAL STANDARDS

### I.   Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.  *See* Fed. R. Civ. P. 12(b)(1).  A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  A facial attack challenges the sufficiency of the allegations contained in a complaint to invoke federal jurisdiction, while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

### II.   Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the

absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at

6

555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

### I.    Motions To Dismiss

Defendants advance multiple grounds for dismissal:  (1) CCM moves to dismiss the medical malpractice and defamation claims for failure to state a claim and alternatively requests that the Court strike Exhibit A to the SAC and other extraneous allegations set forth in the SAC, ECF Nos. 27, 52; (2) LogistiCare seeks dismissal of Plaintiff's Common Rule and ADA claims for failure to state a claim and for failure to comply with the Court's orders, and/or alternatively seeks an order striking portions of the SAC and Exhibit A to the SAC, ECF Nos. 34, 60, 70; (3) UHC contends that Plaintiff fails to state any cognizable claims against it, ECF Nos. 36, 61, 71; and (4) MMG moves to dismiss Plaintiff's medical malpractice claim (the only claim asserted against it) for lack of supplemental jurisdiction, ECF Nos. 41, 62.

## A.    Exhibits To The SAC And Oppositions

LogistiCare, joined by UHC and MMG, moves to strike Exhibit A to the

SAC because it is not a written instrument as contemplated by FRCP 10(c).  ECF

No. 34 at 19–20; ECF Nos. 39, 43.  "A copy of a written instrument that is an

exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P.

10(c).  "A written instrument within the meaning of Rule 10(c) is a document

evidencing legal rights or duties or giving formal expression to a legal act or

agreement, such as a deed, will, bond, lease, insurance policy or security

agreement."  *Mora v. City of Chula Vista*, Case No.: 20cv779-GPC(AGS), 2021

WL 1165054, at *7 (S.D. Cal. Mar. 26, 2021) (internal quotation marks and

citations omitted).  Evidentiary material, extraneous material, witness affidavits,

and declarations do not ordinarily constitute written instruments.  *See id.* (citations

omitted).

Exhibit A to the SAC is a compilation of screenshots, letters, emails, text

messages, and images — most pages in collage form — along with Plaintiff's

personal journal entries.[1]  ECF No. 23-1.  This evidentiary material is provided to

support Plaintiff's claims in the SAC, and much of it is extraneous, so it is not a

---

[1]  Plaintiff has created journal entries listing the same types of unique slurs and
phrases that she has allegedly been subjected to across the state by the different
defendants and their counsel in her many cases within this district.  *See Norton*,
2021 WL 5989107, at *5 (comparing similar allegations and entries across cases).

written instrument as contemplated by FRCP 10(c).  As such, the Court STRIKES Exhibit A to the SAC.

Plaintiff also submits exhibits — all labeled "Exhibit A" — with her oppositions to MMG's, CCM's, and LogistiCare's motions to dismiss containing similar types of evidence.  ECF No. 33 at 22–32; ECF No. 49-1; ECF No. 50 at 6–12.  MMG, CCM, and LogistiCare argue that these exhibits should be disregarded because they are not properly before the Court on a motion to dismiss and they are unauthenticated.   ECF No. 52 at 9–12; ECF No. 60 at 12–13; ECF No. 62 at 9–10.

Under FRCP 12(b)(6), review is ordinarily limited to the contents of the complaint.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell*, 266 F.3d at 988.  A Rule 12(b)(6) motion is treated as a motion for summary judgment if matters outside the pleadings are considered.  *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Like Exhibit A to the SAC, the exhibits submitted with Plaintiff's oppositions include evidentiary and extraneous materials that should not be considered in connection with the motions to dismiss and would not change the

disposition of the motions in any event.  Thus, the Court disregards the exhibits attached to Plaintiff's oppositions.

## B.    ADA Claim (UHC And LogistiCare)

Plaintiff alleges that UHC and LogistiCare violated Title III of the ADA because social workers communicated with her by calling instead of texting or emailing — her preferred methods of communication — about ground and air transportation to appointments on Oahu and in California, leaving her without reasonable transportation and causing "her to miss certain GA related appointments."[2]  ECF No. 23 ¶¶ 91–92.  Plaintiff accuses drivers and insurance representatives of discriminating against her based on her "disabilities" (tinnitus/hearing loss and her body/gender dysphoria) and her color, race and/or ethnicity,[3] thereby depriving her of the equal benefit of transportation services.  *Id.* ¶ 92.

---

[2]  It appears that Plaintiff utilizes "GA" as an acronym for "gender affirming." ECF No. 23 ¶¶ 91–93.  The Court will also do so here.

[3]  These race/ethnicity allegations are irrelevant to the ADA claim.  The Court also disregards allegations raised for the first time in Plaintiff's oppositions against LogistiCare and UHC, and their employees, having nothing to do with the ADA claim, *e.g.*, deliberate infliction of emotional distress, disclosure of private medical information to third parties, and hostile and discriminatory environment in the vehicles.  ECF Nos. 50, 51.

LogistiCare contends that Plaintiff has not alleged facts showing that she is disabled under the ADA, that she was denied transportation services, or that she was denied an equal benefit because of her disability.  ECF No. 34 at 14.  UHC argues that Plaintiff fails to state a claim because it is unclear whether she has a disability as defined by the ADA and her allegations are unrelated to UHC's physical facilities.  ECF No. 36-1 at 22–23 & n.9.

"Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations and public transportation services."  *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005) (citing 42 U.S.C. §§ 12182(a), 12184(a)); *see also* 42 U.S.C. § 12182(b)(2)(B)–(C) (addressing discrimination by private entities operating fixed route and demand responsive systems[4]).  Relevant here, "[e]ntities that provide public accommodations or public transportation . . . must provide auxiliary aids and services to disabled individuals."  *Spector*, 545 U.S. at 128 (citing 42 U.S.C. §§ 12182(b)(2)(A)(iii), 12184(b)(2)(B)).  An exception to this requirement exists, however, if providing auxiliary aides "would 'fundamentally alter' the services or accommodations being offered" or "'result in an undue burden.'"  *Id.* at 129 (citing

---

[4]  A "fixed route system" is "a system of providing transportation of individuals (other than by aircraft) on which a vehicle is operated along a prescribed route according to a fixed schedule."  42 U.S.C. § 12181(4).  A "demand responsive system" is "any system of providing transportation of individuals by a vehicle, other than a system which is a fixed route system."  42 U.S.C. § 12181(3).

42 U.S.C. §§ 12182(b)(2)(A)(ii)–(iii)).  In addition, "Title III does not impose nondiscrimination or accommodation requirements if, as a result, disabled individuals would pose 'a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.'"  *Id.* (citing 42 U.S.C. § 12182(b)(3)).

A plaintiff alleging discrimination under Title III must show that "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citation omitted).

### 1.   Plaintiff Sufficiently Alleges That She Is Disabled

Plaintiff identifies hearing loss/tinnitus and body/gender dysphoria as disabilities.  Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities" such as "caring for oneself" and hearing.  42 U.S.C. § 12102(1)(A), (2)(A).  "Disability" is "construed in favor of broad coverage of individuals."  42 U.S.C. § 12102(4)(A).  LogistiCare and UHC erroneously focus on Plaintiff's failure to *establish* a disability.  At this stage of the proceedings, Plaintiff need only sufficiently *allege* that she is disabled. Plaintiff's allegations must be accepted as true and construed in the light most

favorable to her.  *See Harkins*, 603 F.3d at 669 (citation omitted).  While the SAC is not a model of clarity, nor artfully pled, Plaintiff claims to have medically documented hearing loss and tinnitus and difficulty hearing.  ECF No. 23 ¶¶ 91–92.  Therefore, she adequately *avers* — but has yet to establish — that she is disabled.

LogistiCare and UHC also argue that Plaintiff's alleged body dysmorphic disorder related to gender dysphoria is expressly excluded as a disability under the ADA.  ECF No. 60 at 10 (citing 28 C.F.R. § 36.105(g)(1)); ECF No. 61 at 11–12 (same).  Indeed, "disability" does not include "*gender identity disorders* not resulting from physical impairments."  42 U.S.C. § 12211(b)(1) (emphasis added).  But courts have yet to settle the question of whether gender dysphoria results from physical impairments, thereby excepting it from the foregoing exclusion, and the answer is not as clear cut as LogistiCare and UHC suggest.  *See Doe v. Penn. Dep't of Corr.*, Case No. 1:20-cv-00023-SPB-RAL, 2021 WL 1583556, at *8–9 (W.D. Pa. Feb. 19, 2021) (explaining three approaches for assessing whether gender dysphoria is a categorical exclusion under the ADA — (1) the majority approach, which "views the text's language as expressing Congress's intent 'to exclude from the ADA's protection both disabling and non-disabling gender identity disorders that do not result from a physical impairment'"; (2) "gender dysphoria falls outside of the ADA exclusion so long as the condition substantially limits the plaintiff's

major life activities"; and (3) "a physical etiology underlying gender dysphoria
may exist to place the condition outside of the exclusion for gender identity
disorders 'not resulting from physical impairments'" (citations omitted)), *adopted
by* 2021 WL 1115373 (W.D. Pa. Mar. 24, 2021).  In any event, the Court need not
determine whether body/gender dysphoria is in fact categorically excluded under
§ 12211(b)(1) because Plaintiff already identified a potential disability, and she has
not sufficiently alleged that body/gender dysphoria is a disability nor adequately
connected it to her ADA claim.

Plaintiff classifies body/gender dysphoria as a disability, but the SAC does
not contain any facts indicating that it is a physical or mental impairment
substantially limiting one or more of her major life activities.  In her oppositions,
Plaintiff explains how her body/gender dysphoria prevents her from enjoying a
normal life and/or substantially limits her major life activities.  ECF No. 50 at 3;
ECF No. 51 at 16–17.  Because these specific allegations were not included in the
SAC, however, they cannot bolster Plaintiff's assertion that body/gender dysphoria
is a disability.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In
determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look
beyond the complaint to a plaintiff's moving papers, such as a memorandum in
opposition to a defendant's motion to dismiss." (internal quotation marks and
citation omitted)).  And although Plaintiff concludes that she was also

14

discriminated against because of her body/gender dysphoria, she has not asserted any facts suggesting that UHC's and LogistiCare's purported failure to accommodate her request to communicate by text message or email was at all attributable to her body/gender dysphoria. Plaintiff claims that the discrimination based on her disabilities left her "without reasonable transportation to her appointments." ECF No. 23 ¶ 92. But this vague and conclusory statement, lacking factual support, fails to plausibly allege that UHC or LogistiCare engaged in any misconduct resulting in the denial of transportation services beyond failing to text message or email. Accordingly, Plaintiff fails to sufficiently plead that body/gender dysphoria is a disability or that her ADA claim is connected to body/gender dysphoria.

### 2. Plaintiff Sufficiently Alleges That Transportation Services Are A Public Accommodation Or Public Transportation Services

LogistiCare contends that Plaintiff has not alleged that it is a "private entity that owns, leases, or operates a place of public accommodation," ECF No. 60 at 11, or that it operated a fixed route or demand responsive system. ECF No. 70 at 5. UHC acknowledges that it has physical facilities but asserts that the facilities have no nexus with Plaintiff's ADA claim. ECF No. 36-1 at 21–23. UHC also argues that § 12184 is inapplicable because it is not primarily engaged in the business of

transporting people and that Plaintiff has not alleged that the Medicaid transportation service is a fixed route system.[5]  ECF No. 71 at 3.

Plaintiff alleges that the "Medicaid transportation service is considered a 'public accommodation' . . . and is advertised on the back of Medicaid cards as the only available transportation provider."  ECF No. 23 ¶ 92.  Plaintiff further alleges that "[t]he defendant operates the physical place of operation at a local office building and also inside the vehicles that transport passengers."  *Id.*  Whether LogistiCare is covered by §§ 12184[6] or 12182(b)(2),[7] Plaintiff has sufficiently stated that its transportation services are a public accommodation or public transportation service covered by the ADA.  UHC is also implicated to the extent

---

[5]  UHC appears to concede that § 12182(b)(2)(C) (governing demand responsive systems) applies because Plaintiff arranged for transportation.  ECF No. 71 at 3.

[6]  Section 12184(a) prohibits discrimination "on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce."  42 U.S.C. § 12184(a).  Discrimination includes the failure to "provide auxiliary aids and services consistent with the requirements of section 12182(b)(2)(A)(iii) of this title." 42 U.S.C. § 12184(b)(2)(B).

[7]  Under § 12182(b)(2)(A)(iii), discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."  42 U.S.C. § 12182(b)(2)(A)(iii).  It is also discriminatory for private entities to operate fixed route or demand responsive systems that are not readily accessible to disabled individuals or fail to provide a level of service equivalent to that provided to non-disabled individuals.  *See* 42 U.S.C. § 12182(b)(2)(B)–(C).

the ADA claim concerns § 12182(b)(2) because Plaintiff alleges that LogistiCare is

UHC's exclusive transportation provider in Hawai'i.  ECF No. 23 ¶ 14.  For the

purposes of § 12182(b)(2), "[o]perates includes, with respect to a fixed route or

demand responsive system, the provision of transportation service by a public or

private entity itself or by a person under a contractual or other arrangement or

relationship with the entity."  49 C.F.R. § 37.3.  UHC concedes that it is covered

by this definition for the purposes of § 12182(b)(2)(C).  ECF No. 71 at 5–6 n.4.

To the extent Plaintiff alleges that she suffered disability discrimination with

respect to UHC's physical office, she fails to state a claim.  UHC's physical offices

are arguably places of public accommodation, *see* 42 U.S.C. § 12181(7)(F), but

they are unconnected to the ADA claim, which concerns the purported denial of

transportation services.  The places of public accommodation identified in

§ 12181(7) are "actual, physical places where goods or services are open to the

public, and places where the public gets those goods or services."  *Weyer v.

Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).  While

these categories "'should be construed liberally' to afford people with disabilities

'equal access' to the wide variety of establishments available to the nondisabled,"

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676–77 (2001) (footnotes omitted), "some

connection between the good or service complained of and an actual physical place

is required."  *Weyer*, 198 F.3d at 1114 (footnote omitted); *see Chabner v. United of*

*Omaha Life Ins. Co.*, 225 F.3d 1042, 1047 (9th Cir. 2000).   Because Plaintiff alleges that the denial of transportation services caused her to miss GA-related appointments, *see* ECF No. 23 ¶ 91, there is no connection to UHC's physical offices.[8]

### 3. Plaintiff Sufficiently Alleges That She Was Denied Public Accommodations By UHC And LogistiCare Because Of Her Disability

Finally, Plaintiff alleges that she did not enjoy the equal benefit of transportation services because of her hearing loss/tinnitus.  ECF No. 23 ¶ 92.  Although this allegation is conclusory, Plaintiff has adequately pled the third element of a Title III ADA claim.

For these reasons, the Court DENIES UHC's and LogistiCare's motions to the extent they seek dismissal of Plaintiff's ADA claim.  The Court GRANTS the motions to the extent that Plaintiff has not stated a prima facie ADA claim based on her body/gender dysphoria and GRANTS UHC's Motion to the extent that Plaintiff alleges that UHC denied her access to and enjoyment of its physical offices.  Because the Court will not allow further amendment for the reasons explained below, moving forward, Plaintiff is prohibited from relying on her

---

[8]  As before, Plaintiff improperly supplemented her allegations in her Opposition to UHC's Motion.  Even if the additional allegations could be considered, they do not plausibly show that UHC deprived Plaintiff of the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of its physical offices.  42 U.S.C. § 12182(a).

body/gender dysphoria as a disability or asserting that UHC violated the ADA with respect to its offices.

### C. Common Rule Claim

LogistiCare and UHC move to dismiss Plaintiff's Common Rule claim. ECF No. 34 at 12–13; ECF No. 36-1 at 14–15. Plaintiff denies asserting a Common Rule claim and accuses LogistiCare and UHC of deceiving the Court and deliberately confusing the issue. ECF No. 50 at 1–2; ECF No. 51 at 1–2. Plaintiff's accusations are unwarranted as she cites the Common Rule in the SAC and invokes jurisdiction pursuant to 45 C.F.R. Part 46. ECF No. 23 ¶¶ 3, 14. Insofar as Plaintiff disclaims a Common Rule claim, the Court dismisses all associated allegations. Even if Plaintiff asserted a Common Rule claim, it would be subject to dismissal for failure to state a claim because the Common Rule does not authorize a private right of action. *See Thomas v. Catlin*, 141 F. App'x 673, 674 (9th Cir. 2005); *Touma v. Gen. Couns. of the Regents*, No. SA CV 17-1132-VBF (KS), 2018 WL 3372747, at *12 (C.D. Cal. Apr. 5, 2018), *adopted by* 2018 WL 3357424 (C.D. Cal. July 6, 2018); *McClure v. Youth & Fam. Servs. of Solano Cnty.*, No. C 14-5629 MMC, 2015 WL 1926388, at *7 (N.D. Cal. Apr. 24, 2015). Accordingly, LogistiCare's and UHC's motions are granted to the extent they seek dismissal of the Common Rule claim.

## D.   Title VI

Plaintiff does not formally present a Title VI claim in the SAC but accuses Defendants of violating Title VI.  ECF No. 23 ¶¶ 1, 8–10, 12–14, 94.  The Court rejects Plaintiff's seeming efforts to revive her Title VI claim, which was dismissed with prejudice.  *See Scutt*, 2021 WL 3195018, at *2.

## E.   Medical Malpractice And Defamation Claims

Plaintiff's remaining medical malpractice and defamation claims are state law claims.  Therefore, Plaintiff must have a jurisdictional basis to maintain them in federal court.

### 1.   Diversity Jurisdiction Is Lacking

Plaintiff concludes that diversity jurisdiction exists because UHC is "based in Minnesota while Plaintiff is a resident of Hawaii" and LogistiCare "is based in Georgia."  ECF No. 23 ¶¶ 1, 14.  The Court previously informed Plaintiff that her allegations regarding diversity jurisdiction were deficient and it identified the necessary averments to establish diversity jurisdiction.  *See Scutt*, 2021 WL 3195018, at *4.  The Court also notified Plaintiff that she must provide the parties' citizenships and explained that if Plaintiff and CCM are citizens of Hawaiʻi, diversity jurisdiction could not exist.  *See id.*  Plaintiff again fails to meet her burden of establishing diversity jurisdiction.

20

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  Federal courts are presumed to lack subject matter jurisdiction, and the plaintiff bears the burden of establishing that subject matter jurisdiction is proper.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Federal district courts have original jurisdiction over cases where the amount in controversy exceeds $75,000, exclusive of interest and costs, and where the matter in controversy is between citizens of different states.  *See* 28 U.S.C. § 1332(a)(1).  Complete diversity of citizenship requires that each of the plaintiffs be a citizen of a different state than each of the defendants.  *See Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1025 (9th Cir. 2007) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

As before, Plaintiff has not provided the parties' citizenships.  Although Plaintiff relocated to California since she filed the SAC, citizenship is determined at the time a lawsuit is filed, or when an amended complaint is filed.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) ("It is well settled, for example, that federal-diversity jurisdiction depends on the citizenship of the parties at the time suit is filed." (citations omitted)); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) ("[W]hen a plaintiff files a complaint in federal court and

then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." (citations omitted)).  In the SAC, Plaintiff avers that she is a resident of Hawaiʻi.  ECF No. 23 ¶ 1.  "But the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  State citizenship is determined by a party's state of domicile, not residence.  *See id.*  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  *Id.* (citation omitted).

Assuming Plaintiff was a citizen (and not merely a resident) of Hawaiʻi when she filed the SAC, complete diversity is lacking because CCM and MMG are also citizens of Hawaiʻi.[9]  ECF Nos. 53–54.  Therefore, diversity jurisdiction does not exist.

### 2.    Supplemental Jurisdiction

In the absence of diversity jurisdiction, the Court must determine whether supplemental jurisdiction exists as to the medical malpractice and defamation claims.  MMG argues that it should be dismissed from this action because the

---

[9]  Corporations are citizens of "(1) the state where its principal place of business is located, and (2) the state in which it is incorporated."  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citing 28 U.S.C. § 1332(c)(1)); *see also Nat'l Ass'n of Realtors v. Nat'l Real Estate Ass'n, Inc.*, 894 F.2d 937, 939 (7th Cir. 1990) (explaining that a non-profit corporation's citizenship is that of the corporation).

Court lacks supplemental jurisdiction over Plaintiff's medical malpractice claim.[10]

ECF No. 41-1 at 5.

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). A state-law claim is part of the same case or controversy under Article III of the U.S. Constitution "when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation omitted).

Here, Plaintiff's medical malpractice and defamation claims do not share a common nucleus of operative fact with the ADA claim. As discussed above, the ADA claim is narrow and exclusively concerns the purported failure to accommodate Plaintiff's hearing loss/tinnitus with text messaging or email, which denied her access to transportation services for medical appointments. Plaintiff's medical malpractice claim raises a host of allegations regarding the deprivation of GA procedures and surgery, as well as other forms of medical treatment. ECF No.

---

[10] In opposing Plaintiff's Motion to Amend, CCM and MMG argue that the Court lacks supplemental jurisdiction over the defamation and medical malpractice claims. ECF No. 66 at 5–6.

23 ¶¶ 18–81.  Plaintiff's defamation claim asserts that UHC and CCM:  (1) shared her medical information to cause damage to her reputation; (2) allowed medical personnel to observe her medical appointments; (3) acted with hostility; and (4) improperly accused her of behaving in a racist and profane manner.  *Id.* ¶¶ 82–90. These claims involve a completely distinct set of facts arising from different events.[11]  Accordingly, the Court lacks supplemental jurisdiction over the medical malpractice and defamation claims under § 1367, and they must be dismissed pursuant to FRCP 12(b)(1).

Given the dismissal of these claims, the Court finds it unnecessary to address CCM's and LogistiCare's alternative requests to strike portions of the SAC.

## F.    Dismissal For Violating Court Orders

LogistiCare, joined by UHC and MMG, argues that the SAC should be dismissed due to Plaintiff's failure to comply with the Court's orders.  ECF Nos. 34, 39, 43.  LogistiCare focuses on its addition as a party, the addition of the

---

[11]  In the ADA and medical malpractice claims, Plaintiff alleges that LogistiCare drivers drove hands free.  ECF No. 23 ¶¶ 77, 92.  However, this allegation is irrelevant to either claim and does not connect them for the purposes of supplemental jurisdiction.  Moreover, Plaintiff's allegations against LogistiCare in her medical malpractice claim reference "exclusionary religious imagery and symbols" in the transportation vehicles and the drivers' purported disclosure of medical information and refusal to transport her, which caused her to use alternative transportation and incur expenses that UHC would not reimburse.  *Id.* 77–80.  Notably, these allegations are unconnected to the ADA claim and are even tangential to Plaintiff's primary medical malpractice allegations.

Common Rule claim,[12] "fail[ure] to set forth factual allegations to a single set of facts and circumstances,"[13] and failure to articulate the elements of each claim and the related circumstances.  ECF No. 34 at 16.  Although the SAC is deficient in many respects, the Court cannot conclude that Plaintiff's failure to fully comply with Court orders warrants dismissal.  This Court prohibited Plaintiff from adding new parties in the FAC — except for identifying UHC subsidiaries — or claims without leave of court.  *See Scutt*, 2021 WL 3195018, at *4.  And in fact, neither LogistiCare nor MMG, both of whom were added as defendants in the SAC, are subsidiaries of UHC.  ECF No. 70 at 2; ECF Nos. 37, 46, 53.  However, in authorizing the filing of the SAC, Magistrate Judge Trader did not preclude Plaintiff from adding parties or claims.  ECF No. 22.

As for Plaintiff's failure to comply with the requirements imposed by Magistrate Judge Trader, the Court declines to exalt form over substance.  The Court must liberally construe pro se pleadings and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings

---

[12]  LogistiCare argues that this is a violation of "FRCP Rule 15(2)."  ECF No. 34 at 9, 16–17.  There is no such provision, and even assuming LogistiCare intended to cite FRCP 15(a)(2), it would not provide a basis for dismissal.

[13]  LogistiCare appears to be relying on the requirements imposed by Magistrate Judge Trader's in permitting Plaintiff to file the SAC, so this should state:  failure to limit each paragraph setting forth factual allegations to a single set of facts and circumstances.  ECF No. 22.

drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal

quotation marks, alterations, and citation omitted). The sole remaining ADA claim

consists of three paragraphs. There is no basis to dismiss this claim merely

because it is not perfectly pled or formatted. That said, Plaintiff is again reminded

that she must comply with all statutes, rules, and orders, and her failure to do so

may result in the imposition of sanctions, including but not limited to dismissal.

Local Rule 81.1(a).

## II.    Motion To Amend

Plaintiff moves to amend the SAC to add (1) a claim under the Affordable

Care Act ("ACA") and (2) allegations regarding her body/gender dysphoria with

respect to her ADA claim. ECF No. 64. Defendants oppose amendment on the

grounds that amendment would be futile, Plaintiff still fails to state a claim, and

Plaintiff already had multiple opportunities to amend. ECF Nos. 66–68.

A party may amend its pleading with leave of court and courts "should

freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Requests for

leave to amend should be granted with 'extreme liberality.'" *Brown v. Stored

Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citation omitted). The

determination whether a party should be allowed to amend a pleading is left to the

discretion of the court. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S.

321, 330 (1971) (citation omitted). Factors to be considered in determining

whether to permit amendment include: "undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility." *Brown*, 953 F.3d at 574 (citation omitted). Prejudice to the opposing party is the factor "that carries the most weight." *Id.* (citation omitted).

Plaintiff submitted a redline of her proposed third amended complaint, but she has not materially amended the SAC. ECF No. 64-2. Instead, she adds a supplemental memorandum with new allegations to the attached Exhibit A. *Id.* at 87–91. Not only is this procedurally improper, but Plaintiff has also failed to demonstrate that amendment — or supplementation, as explained below — is warranted.

### A. Allegations Regarding Body/Gender Dysphoria

The Court earlier ruled that Plaintiff insufficiently alleged that her body/gender dysphoria is a disability and, in any event, failed to connect it to her ADA claim, which concerns her hearing loss/tinnitus. Thus, any amendments intended to bolster her allegations would be futile and are unnecessary to sustain her ADA claim. Additionally, allowing amendment at this juncture would be prejudicial to UHC and LogistiCare because Plaintiff commenced this action in July 2021, she already had two opportunities to amend her ADA claim and failed to cure deficiencies, and she unduly delayed in requesting this amendment.

## B.     ACA Allegations

Plaintiff's ACA allegations are not proposed amendments to the SAC;[14] they are supplemental allegations in a "supplemental memorandum" that relate in part to occurrences after she filed the SAC on October 31, 2021.  ECF No. 64-2 at 87–89 (describing events occurring at the end of 2021).

FRCP 15(d) authorizes courts to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented[,] . . . even though the original pleading is defective in stating a claim or defense."  Fed. R. Civ. P. 15(d); *see also Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." (citation omitted)).  Courts are given broad discretion to allow supplemental pleadings, which are intended "to promote the economical and speedy disposition of the controversy."  *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (citations omitted).  Leave to permit supplemental pleadings is favored but such pleadings "cannot be used to introduce a 'separate,

---

[14]  Even if the allegations were treated as proposed amendments under FRCP 15(a)(2), the Court would deny amendment because of the prejudice to Defendants and undue delay.  Plaintiff twice amended her pleading and has alleged discrimination regarding her health care since she commenced this action seven months ago.  Therefore, she has had ample opportunity to assert an ACA claim.

distinct and new cause of action.'" *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (citations omitted).

Through her requested supplementation, Plaintiff attempts to introduce a new and distinct cause of action. The underlying allegations are somewhat related to Plaintiff's medical malpractice claim but that was dismissed because it is not part of the common nucleus of operative facts as the ADA claim. Allowing supplementation for the purpose of bringing a separate ACA claim would not support economy or the speedy resolution of the controversy. Supplementation is therefore improper, and Plaintiff's Motion is DENIED.

## CONCLUSION

For the reasons stated herein, the Court: (1) GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss and joinders, ECF Nos. 27, 34, 36, 38, 39, 41, 43, and (2) DENIES Plaintiff's Motion for Leave to Amend Pleading, ECF No. 64. Plaintiff's medical malpractice and defamation claims are dismissed without prejudice for lack of supplemental jurisdiction and Exhibit A to the SAC is stricken. ECF No. 23-1. Only Plaintiff's ADA claim related to her hearing loss/tinnitus remains.

//

//

//

IT IS SO ORDERED.

DATED:      Honolulu, Hawai'i, March 15, 2022.



Jill A. Otake
United States District Judge

CV 21-00323 JAO-RT; *Scutt v. UnitedHealth Ins. Co.*; ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND JOINDERS AND (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLEADING